STEPHEN CHA-KIM* (NY - 4979357)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: 212.836.8000
Email:  stephen.cha-kim@arnoldporter.com

CARSON ANDERSON (CA - 317308)
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Five Palo Alto Square, Suite 500
Palo Alto, CA  94306-3807
Telephone: 650.319.4500
Email:  carson.anderson@arnoldporter.com

NATALIE STEIERT* (DC - 90010655)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington,  DC 20001-3743
Telephone: 202.942.5000
Email:  natalie.steiert@arnoldporter.com

OREN NIMNI* (MA - 691821)
AMARIS MONTES* (MD - 2112150205)
RIGHTS BEHIND BARS
416 Florida Avenue N.W. #26152
Washington, D.C.  20001-0506
Telephone: (202) 455-4399
Email:  oren@rightsbehindbars.org
           amaris@rightsbehindbars.org

SUSAN M. BEATY (CA - 324048)
CALIFORNIA COLLABORATIVE FOR
IMMIGRANT JUSTICE
1999 Harrison Street, Suite 1800
Oakland, California  94612-4700
Telephone:  (510) 679-3674
Email: susan@ccijustice.org

MARK RAFTREY (CA - 352610)
BROOKE D'AMORE BRADLEY (CA -
353030)
ARNOLD & PORTER KAYE SCHOLER
LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: 415-471-3361
Email:  mark.raftrey@arnoldporter.com
brooke.damorebradley@arnoldporter.com

*Pro hac vice pending

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

|  |  |
|---|---|
| M.D.,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA; UNITED STATES OF AMERICA FEDERAL BUREAU OF PRISONS, a governmental entity; and OLIVEROS,<br><br>        Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION................................................................................................................1

JURISDICTION AND VENUE............................................................................................3

THE PARTIES .....................................................................................................................3

CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS ..............6

JURY DEMAND .................................................................................................................6

FACTUAL ALLEGATIONS...............................................................................................6

I.      Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond
        to Reports of Staff Sexual Misconduct ...................................................................6

II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish. ................9

III.    Defendant OLIVEROS and Nurse COHEN Sexually Abused Plaintiff ...............11

IV.     Officer DINES and Nurse COHEN Subjected Plaintiff To Sexual Harassment ...12

V.      Officer VARGAS Grabbed and Physically Assaulted Plaintiff.............................12

VI.     Lieutenant PUTNAM and Officers RAMOS and VARGAS Subjected Plaintiff to
        Additional Transphobic Harassment and Medical Neglect....................................13

VII.    Officer RAMOS and Lieutenant PUTNAM Subjected Plaintiff to Overt Racism
        and Racially Motivated Harassment ......................................................................13

VIII.   Officer RAMOS and Lieutenant PUTNAM Retaliated or Threatened to Retaliate
        Against Plaintiff ....................................................................................................14

IX.     Plaintiff continued to face consistent retaliation and placement in the SHU while he
        was in FCI Hazelton ..............................................................................................15

PRAYER FOR RELIEF.....................................................................................................30

COMPLAINT

Plaintiff M.D. ("Plaintiff"), by and through his attorneys alleges against the Defendants as above captioned as follows upon information and belief:

**INTRODUCTION**

1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention.  The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

COMPLAINT

detailed mandatory regulations that provide precise procedures that prisons must follow.  The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

4.     Despite these mandatory protections, while incarcerated at FCI Dublin from 2017 to 2022, Plaintiff was subjected to sexual abuse, sexual harassment, physical assault, overt racism, transphobic harassment, and retaliation.  Defendant OLIVEROS forced plaintiff to have sex with his girlfriend while Defendant OLIVEROS watched.  Officer DINES sexually harassed Plaintiff while he was in the SHU by calling him a "cunt sucker", "cum drinker," "bitch," "dyke" and other slurs on a daily basis.  Officer VARGAS grabbed Plaintiff from his cell and pulled him to the ground, injuring Plaintiff's back.  Nurse COHEN sexually harassed Plaintiff by taunting Plaintiff about receiving Hormone Replacement Therapy ("HRT") shots in front of dozens of women.  Nurse COHEN later sexually abused Plaintiff by wearing revealing clothing, grabbing Plaintiff's buttocks, and becoming sexually aroused while administering Plaintiff's shot.  Plaintiff also experienced overt racism from officer RAMOS, who became angry and retaliated against Plaintiff for talking with Latina women.  Similarly, officer PUTNAM intentionally targeted Black individuals such as Plaintiff, by tearing apart Plaintiff's cell, ignoring Black individuals, and threatening them with harassment if they dated outside of their race.  Officers PUTNAM and VARGAS also harassed Plaintiff by directing transphobic comments toward him and denying him medically necessary provisions.  Finally, officer PUTNAM retaliated against Plaintiff for trying to report PUTNAM's behavior by transferring him to another prison.  In doing so, Defendants violated Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and common law on battery.

5.     As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

6.     Plaintiff brings this suit under the United States Constitution Eighth Amendment's prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual assault, and in connection with the deficient supervision and custodial care provided by various BOP personnel, including Defendant OLIVEROS and officers RAMOS, DINES, VARGAS,

1    PUTNAM, and COHEN, within the scope of their employment within the BOP.  Plaintiff also

2    brings this suit under the Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. §§ 7101, *et seq.*

3                                    **JURISDICTION AND VENUE**

4         7.    This Court has original subject matter jurisdiction in this action involving claims

5    arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).

6    Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing

7    actions seeking relief against the United States.

8         8.    The Court has personal jurisdiction over the Defendants because the alleged

9    incidents occurred within the confines of the State of California.

10        9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as

11   a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the

12   boundaries of this District, in the County of Alameda.

13                                         **THE PARTIES**

14        10.   At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP, at

15   FCI Dublin located at 5701 8th St., Dublin, CA 94568.  Plaintiff now resides at Federal

16   Correctional Institute Hazelton at 1640 Sky View Drive in Bruceton Mills, West Virginia 26525.

17        11.   Defendant United States of America (hereinafter "United States") is the appropriate

18   defendant for Plaintiff's claims under the Federal Tort Claims Act.  The United States is a

19   sovereign entity that has waived its immunity for certain claims, including the claims set forth

20   herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees

21   that occur within the scope of their employment.

22        12.   At all times relevant hereto, Defendant United States, acting through the BOP, was

23   responsible for the operation, control, supervision, policy, practice, implementation, and conduct

24   of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training,

25   supervision, management, discipline, and conduct of all BOP personnel, including but not limited

26   to Defendant OLIVEROS and officers RAMOS, GARCIA, DINES, VARGAS, and PUTNAM,

27   and nurse COHEN.

28        13.   In addition, at all relevant times, United States was responsible for enforcing the

COMPLAINT

rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

14. RAY J. GARCIA ("GARCIA") was an associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021. At all times relevant hereto, GARCIA was the Warden, Associate Warden, Correctional Officer, and/or an employee of BOP and Defendant United States. In his capacity as an agent, servant, and employee of Defendant United States, and within the course and scope of his employment as such, warden GARCIA was responsible for the day-to-day oversight, supervision, care, custody, control, direction, safety, and well-being of people confined at FCI Dublin, including Plaintiff.

15. Defendant OLIVEROS ("Defendant OLIVEROS") was an officer at FCI Dublin during the time period relevant to the events described herein and is sued in his individual capacity. While performing the acts and omissions that Plaintiff alleges in this Complaint, Defendant OLIVEROS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

16. Officer DINES ("DINES") was an officer at FCI Dublin during the time period relevant to the events described herein. While performing the acts and omissions that Plaintiff alleges in this complaint, officer DINES was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

17. Officer VARGAS ("VARGAS") was an officer at FCI Dublin during the time period relevant to the events described herein. While performing the acts and omissions that Plaintiff alleges in this Complaint, VARGAS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

18. Lieutenant STEPHEN PUTNAM ("PUTNAM") was a lieutenant at FCI Dublin during the time period relevant to the events described herein. While performing the acts and omissions that Plaintiff alleges in this complaint, PUTNAM was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

19. Nurse FRASER COHEN ("COHEN") was a nurse at FCI Dublin during the time

4

period relevant to the events described herein.  While performing the acts and omissions that Plaintiff alleges in this Complaint, COHEN was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

20.     NICHOLAS T. RAMOS ("Officer RAMOS") was an officer at FCI Dublin during the time period relevant to the events described herein.[2]  While performing the acts and omissions that Plaintiff alleges in this Complaint, RAMOS was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

21.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendant OLIVEROS and officers RAMOS, GARCIA, DINES, VARGAS, and PUTNAM to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

22.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

23.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

24.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and

---

[2] In August 2022, former Dublin Officer Nicholas T. Ramos died by suicide while on administrative leave and under investigation for sexually abusing incarcerated women.

COMPLAINT

omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant. Accordingly, each of them is jointly and severally liable to Plaintiff.

25.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

## CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS

26.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

27.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

28.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on April 3, 2023.  By October 3, 2023, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

## JURY DEMAND

29.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims in this action that are so triable.

## FACTUAL ALLEGATIONS

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

30.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

31.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were

COMPLAINT

immediately binding on BOP facilities. *Id.*

32.     Under PREA regulations, BOP is required to "train all employees who may have contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates." *Id.* § 115.31(a).  The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years. *Id.* § 115.31(b)–(c).  In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies." *Id.* § 115.31(c).

33.     PREA regulations mandate staff reporting.  BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation."  28 C.F.R. § 115.61(a).

34.     Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b).  The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e).  Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f).  "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

35.     Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the end of the staff member's employment.  *Id.* § 115.71(h)–(i).  After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency.  *Id.* § 115.73(a)–(b).  The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination.  *Id.* § 115.76(b).

36.     PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse.  PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse.  *Id.* § 115.67.  These protective measures include strict limits on the use of administrative segregation.  The regulations provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and . . . there is no available alternative means of separation from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility may" hold the individual in segregated housing for "less than 24 hours while conducting the assessment."  *Id.* § 115.43(a).   Any incarcerated person placed in protective custody for this purpose "shall have access to programs, privileges, education, and work opportunities to the extent possible."  *Id.* § 115.43(b).

37.     Defendants repeatedly violated these regulations.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

COMPLAINT

**II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.**

38.     Eight former officers—including former Warden Ray Garcia and a former chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021, with more charges likely forthcoming.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D. Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

39.     Warden GARCIA was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by officers RAMOS, DINES, COHEN, and PUTNAM.  As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Warden GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

40.     Warden GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI.  GARCIA was sentenced to 5 years and 10 months in prison.

41.     Warden GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many more of his underlings, including officers RAMOS, DINES, COHEN, and PUTNAM.

42.     Warden GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite this knowledge, GARCIA did not do anything to stop it, even though he had a duty to do so.  Due to the fact that GARCIA had knowledge of prior sexual abuse at FCI and failed to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

43.     Warden GARCIA had actual knowledge that inmates complained about the assaults.  GARCIA knew or should have known that the inmates were subjected to retaliation. Because GARCIA did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.  Had GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused.  Warden GARCIA's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

44.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Warden GARCIA.  During GARCIA's tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

45.     With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, GARCIA failed to protect the inmates and turned a blind eye.  Such behavior set the tone for rape culture at FCI Dublin, garnering GARCIA and his subordinate correctional officers and employees the nickname – "the Rape Club."

46.     Further, Warden GARCIA and others inadequately supervised and trained the prison's correctional officers and other employees, including officers RAMOS, DINES, COHEN, and PUTNAM.  The UNITED STATES failed to supervise which was a substantial factor in

COMPLAINT

1    causing Plaintiff's abuse.

2       47.    Defendants repeatedly violated the law.  From inadequate training, to lack of

3    confidential reporting mechanisms and access to outside support services, to failures in

4    administrative investigations, widespread misuse of administrative segregation, and rampant staff

5    retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an

6    unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked

7    at the trial of Warden GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United*

8    *States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

9    **III.    Defendant OLIVEROS and Nurse COHEN Sexually Abused Plaintiff**

10      48.    Plaintiff was incarcerated at FCI Dublin on or around August 2017.  Around

11   December 2017, Defendant Officer OLIVEROS forced Plaintiff and his girlfriend to have sex

12   while he watched.  Prior to this incident Defendant OLIVEROS regularly made threats and

13   derogatory comments about Plaintiff being transgender, so Plaintiff was fearful to say no to

14   Defendant OLIVEROS's request to watch them have sex. In exchange for allowing him to watch

15   Plaintiff and his girlfriend have sex, Defendant OLIVEROS refrained from writing disciplinaries

16   against Plaintiff and his girlfriend and allowed them to have additional freedoms in their cell.

17      49.    This was part of a regular practice for Defendant Officer OLIVEROS, who was

18   purportedly "dating" one of the women housed in the cell next to Plaintiff's girlfriend, and often

19   allowed people in the units to have sex with each other on the condition that he be allowed to

20   watch.

21      50.    Nurse COHEN sexually abused Plaintiff through inappropriate sexual touching

22   while treating him with HRT shots.  COHEN regularly provided Plaintiff with his HRT shot

23   which he administered in his hip every two weeks. He did this regularly for months, always

24   providing Plaintiff's shot through his hip. COHEN often would require Plaintiff to remove his

25   pants and be half naked in front of others while he administered it in public places like the lobby.

26   In late 2021 or early 2022, nurse COHEN showed up to administer Plaintiff's shot wearing

27   extremely tight and revealing scrubs.  At this point in time, COHEN administered the shots in the

28   laundry room out of sight of others.  Nurse COHEN became visibly aroused, grabbed Plaintiff's

                                            11

buttocks, and inserted the shot there rather than his hip as usual.  Plaintiff recognized this was inappropriate touching, but did not feel comfortable telling a nurse or guard.  Plaintiff decided to stop seeking HRT because there was no one other than nurse COHEN to administer the shots. Plaintiff has only been able to obtain HRT within this last month while at FCI Hazelton.

**IV.      Officer DINES and Nurse COHEN Subjected Plaintiff To Sexual Harassment**

51.     Officer DINES sexually harassed Plaintiff while Plaintiff was in the SHU for three periods of time in 2021: March 2 to July 1, July 29 to August 10, and November 4 to December 22.  DINES called Plaintiff a "cunt sucker," "cum drinker," "bitch," "dyke," and other slurs on a daily basis.  Additionally, in Plaintiff's presence, officer DINES would frequently force other women in the SHU to expose themselves and shake their breasts to get extra food or items like pens.

52.     Nurse COHEN sexually harassed Plaintiff by taunting him while administering Plaintiff's HRT shots in front of 40-50 other women.  COHEN made Plaintiff pull down his pants in front of the whole room, and announced that it was "time to get your man shot."  Plaintiff decided to forego treatment rather than face further transphobic harassment.

53.     To Plaintiff's understanding, officer DINES was never placed on administrative leave or fired.

**V.      Officer VARGAS Grabbed and Physically Assaulted Plaintiff**

54.     On July 29, 2021, officer VARGAS physically assaulted Plaintiff by pulling him out of his cell and onto the ground, injuring his back.  VARGAS had found contraband in Plaintiff's toilet, and got radio instructions from lieutenant PUTNAM to take Plaintiff from his cell.  Rather than giving Plaintiff time to exit his cell on his own, or waiting for another officer to arrive before touching Plaintiff per prison policy, officer VARGAS grabbed Plaintiff with both hands and pulled him into the hallway.  VARGAS and Plaintiff tussled as Plaintiff attempted to get away, and officer VARGAS pulled Plaintiff to the ground, injuring his back.  VARGAS was later walked off the job for his actions.

55.     After this incident, Plaintiff was placed in the SHU for over a week and half. While he was in the SHU, lieutenant PUTNAM took all of Plaintiff's personal pictures including

COMPLAINT

1   disposing of his mother' obituary.  Plaintiff is aware it was PUTNAM because other officers told

2   him that it was him, and PUTNAM himself confirmed it.

3   **VI.    Lieutenant PUTNAM and Officers RAMOS and VARGAS Subjected Plaintiff to
        Additional Transphobic Harassment and Medical Neglect**

4

5          56.     Lieutenant PUTNAM and officers RAMOS and VARGAS directed constant

6   transphobic harassment toward Plaintiff and denied him medically necessary treatment and

7   provisions.  Officer RAMOS often made these comments when Plaintiff was dating Latina women

8   in the facility, likely because of RAMOS's interest in specifically assaulting Latina women.

9          57.     Lieutenant PUTNAM, officer RAMOS, and officer VARGAS called Plaintiff

10  "ma'am" despite knowing that Plaintiff identified as a man.  Officer RAMOS and lieutenant

11  PUTNAM made repeated comments such as, "Why would women sleep with you, you're not a

    real man."

12

13         58.     Lieutenant PUTNAM and officer RAMOS also told Plaintiff that they "couldn't

14  wait to have the opportunity to show him what a real man was."  PUTNAM also stated, "When I

15  put my hands on you, you'll know that a *real* man has touched you."

16         59.     When Plaintiff arrived at FCI Dublin, he was denied men's underwear and told

17  "there are no men in this facility."  When Plaintiff eventually got access to appropriate underwear,

18  guards threw them away, and Plaintiff was forced to purchase more.

19  **VII.   Officer RAMOS and Lieutenant PUTNAM Subjected Plaintiff to Overt Racism and
         Racially Motivated Harassment**

20         60.     Officer RAMOS subjected Plaintiff, a Black man, to racist outbursts by ransacking

21  Plaintiff's cell, screaming at him, and threatening to send him to the SHU when RAMOS found

22  out that Plaintiff was talking to Latina women.

23         61.     Lieutenant PUTNAM similarly harassed Plaintiff by targeting Black individuals for

24  placement in the SHU, tearing up Plaintiff's cell, breaking his things, and throwing away his

25  property.  They also made racist comments, stating that white people who were with Plaintiff and

26  other Black incarcerated people were "N****r lovers."  This played a role in officer VARGAS's

27  assault on Plaintiff described above.  Once PUTNAM heard that VARGAS was at Plaintiff's cell,

28  PUTNAM unnecessarily escalated the interaction by ordering VARGAS to remove Plaintiff from

COMPLAINT

his cell.  Lieutenant PUTNAM would also ignore Black individuals who were placed in the SHU, turn on the air conditioning even when people did not have blankets, or leave bright lights on for days at a time.

62.     PUTNAM also repeatedly threatened Plaintiff.  PUTNAM threatened to strip and harass Plaintiff if he dated outside his race.

**VIII.   Officer RAMOS and Lieutenant PUTNAM Retaliated or Threatened to Retaliate Against Plaintiff**

63.     Plaintiff reported Lieutenant PUTNAM's actions to the BOP delegation that occurred in Spring 2022 at FCI Dublin. When he reported, the delegation brushed off Plaintiff's report and simply said they "would look into it" but did nothing to follow up.

64.     PUTNAM also ignored Plaintiff's complaints about other officers.  Around February or March 2022, Plaintiff tried to report Officer RAMOS and another officer to Lieutenant PUTNAM, but PUTNAM took no action against RAMOS, who was a friend of his.

65.     Officer RAMOS also threatened to retaliate against Plaintiff.  RAMOS came to Plaintiff's cell and banged on the door to wake him up.  RAMOS said, "If I find any contraband in the kitchen, I'm going to put it all on you.  You're going to the hole.  I already talked to Putnam, you know I can get it done."  Plaintiff understood that RAMOS was threatening to pin something on him that he did not do and put him in the SHU.

66.     Lieutenant PUTNAM did in fact did put Plaintiff in the SHU on multiple occasions without cause.  PUTNAM did not provide any disciplinary reports or documentation about why he would place Plaintiff in the SHU.  Plaintiff often asked for documentation but was denied. When Plaintiff asked about how long he was going to be in the SHU, PUTNAM would respond, "Oh I don't, know, maybe two months, maybe three to four months, who knows."

67.     PUTNAM retaliated against Plaintiff by transferring him to FCI Hazelton for trying to report PUTNAM's transgressions to a BOP delegation.  A woman in Internal Affairs told Plaintiff, "We will deal with him."  When PUTNAM found out what Plaintiff had done, he told Plaintiff, "I can't believe you would report me."  Plaintiff believes PUTNAM then initiated Plaintiff's transfer.

**IX.   Plaintiff continued to face consistent retaliation and placement in the SHU while he was in FCI Hazelton**

68.   Once Plaintiff was transferred to Hazelton, he continued to experience harassment. Guards denied him underwear and tissues, and taunted him by saying he was not transgender, and asking, "Why are you bleeding if you don't receive the testosterone shots?"  While he was on his cycle, Plaintiff was denied underwear for almost a whole day even though he is supposed to receive both boxers and underwear.  Officer Hall ignored Plaintiff's requests, saying, "you need boxers and underwear? Are you a man or a woman?"  Plaintiff resorted to pressing the emergency button when bleeding heavily, and Nurse Blateso responded by reading Plaintiff's note so everyone could hear.  At Hazelton, Plaintiff did not receive his HRT medication for over a year and half, and was often denied psychiatric medication, or support from his psychologist, Dr. Seymour regarding the torture he experienced at Dublin.  Dr. Seymour said, "Maybe you should talk to your lawyer about it because I can't offer you any help."

69.   Since being at FCI Hazelton, he has consistently been placed in the SHU for weeks to months at a time without being informed of what disciplinary infraction he has, nor have the ability to challenge his SHU placement in the SHU. Most recently, he was placed in the SHU for over a month without being issued a disciplinary report. Plaintiff's repeated placement in the SHU without cause while being targeted for reporting has caused Plaintiff constant fear of retaliation, even when outside of FCI Dublin walls.

70.   As a result of Defendants' abusive actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect him today. Plaintiff has been diagnosed with Bipolar Disorder, Depression, Paranoid Schizophrenia, and a sleeping disorder. Throughout his time at Dublin, he never received appropriate medical and mental healthcare as a result of this ongoing trauma and mental health conditions.

### CLAIMS FOR RELIEF UNDER THE FTCA

### FIRST CLAIM FOR RELIEF
*Plaintiff Against the United States*
**(Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)**

71.   Plaintiff incorporates by this reference every allegation in the preceding paragraphs

COMPLAINT

as if fully set forth herein.

72.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

73.     A person commits a sexual battery when he acts with the intent to cause a harmful or offensive contact with another by use of the person's intimate part, and a sexually offensive contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

74.     Defendants subjected Plaintiff  to sexual acts, with the intent to cause harmful or offensive contact.  Such contact with Plaintiff was deeply offensive to his personal dignity and would offend a person of ordinary sensitivity.

75.     As a direct and proximate result of the foregoing, Plaintiff suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

76.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**SECOND CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

77.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

78.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

79.     A person is liable for IIED when the defendant engages in outrageous conduct, when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the

16

conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress, the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe emotional distress.

80.     Defendant United States, individually or through its agents, servants, contractors, and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual acts while incarcerated in their custody, through the above-described acts and omissions.

81.     Plaintiff's injuries and damages were caused by intentional torts perpetrated by Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts perpetrated by its agents, including correctional officers, that occurred within the scope of their employment under color of federal law.

82.     At all relevant times, Defendants were acting under color of law by supervising, disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff within the scope of their employment for the United States.

83.     Defendants used their authority as law enforcement officers to sexually assault and harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

84.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### THIRD CLAIM FOR RELIEF
***Plaintiff Against the United States***
**(Sexual Harassment - Cal. Civ. Code § 51.9)**

85.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

86.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

17

COMPLAINT

87.    A person is liable for sexual harassment when a special relationship exists between a plaintiff and person where there is a considerable imbalance of power; the defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer economic loss or personal injury including emotional distress or violation of a statutory or constitutional right.

88.    There exists in FCI Dublin, as all prisons, an extreme imbalance of power between the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons lives.  In addition to this always-present imbalance of power, the problem is compounded by retaliation against those who report misconduct.

89.    For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between Defendants and Plaintiff due to the coercive power of the officers' positions.

90.    Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9 by repeatedly sexually abusing him.

91.    Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

92.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### FOURTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
**(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

93.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

94.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during

18

work hours.

95.     A person interferes with another's civil rights if the person uses or attempts to use threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by the Constitution or state or federal laws.

96.     Speech alone is sufficient where the threatened person reasonably fears violence because the person threatening had the apparent ability to carry out the threat.  Because of the coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation before, Plaintiff reasonably feared violence by Defendants.

97.     Defendant United States through its agents, servants, contractors, and/or employees violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm and sexual violation, imposition of punishment without due process, and cruel and unusual punishment.  Defendants violated these rights by threats, intimidation, or coercion.

98.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

99.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**FIFTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Gender Violence – Cal. Civ. Code § 52.4)**

100.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

101.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

102.     Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have

19

COMPLAINT

1   resulted in criminal complaints, charges, prosecution, or conviction.

2       103.    The conditions at FCI Dublin are that of coercive conditions, as evident by officers

3   regularly withholding things like out of cell time or personal property in exchange for sexual

4   favors.  Further, officers exchanged sexual favors for perks that are not normally available to

5   inmates such as treats, alcohol, and the ability to roam the halls.

6       104.    Defendants discriminated against Plaintiff based on his sex and/or gender when

7   they repeatedly sexually abused him, physically intruding and invading upon his body under

8   coercive conditions.

9       105.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional

10  distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality

11  life and dignity, as well as medical and economic injuries.

12      106.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

13  States for the wrongful acts/omissions of its employees.

**SIXTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Invasion of Privacy – California common law)**

16      107.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs

17  as if fully set forth herein.

18      108.    Plaintiff brings this claim against the United States under the FTCA based on acts

19  and/or omissions of Defendant United States and all other Defendants while working in their

20  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

21  acting within the scope of their employment as federal employees in their official uniforms during

22  work hours.

23      109.    The elements of invasion of privacy are (1) whether the defendant intentionally

24  intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the

25  plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an

26  ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss,

27  or harm.

28      110.    Defendants intentionally and substantially intruded, both physically and otherwise,

COMPLAINT

upon Plaintiff's seclusion when they repeatedly sexually abused him.

111.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

112.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

113.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

## SEVENTH CLAIM FOR RELIEF
### *Plaintiff Against the United States*
## (Negligence – California common law)

114.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

115.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

116.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

117.    At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

118.    **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

COMPLAINT

119.     BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

120.     United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

121.     It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

122.     It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

123.     **Breach of Duty.** The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing sexual abuse and retaliation against Plaintiff.

124.     A reasonable administrator would have complied with PREA regulations, including safeguarding against retaliation for those who report misconduct.

125.     A reasonable administrator would also not have exposed Plaintiff to the danger of ongoing sexual abuse.

126.     Agents, servants, contractors, and/or employees of Defendant United States knew or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

127.     Despite notice, Defendant United States, through its employees, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal regulations and BOP policy.

128.     The United States, through its employees also failed to train, retain, and supervise officers as well as monitor and investigate them.

129.     When the employer is aware of its employees' tortious conduct, as it was here, and it ignores or assists in it, retention of employees does not represent legitimate policy

considerations warranting discretion.

130.   At all relevant times, each of the Defendants stood in such a relationship with the other Defendants as to make each of the Defendants liable for the acts and omissions of all other Defendants in regard to their treatment of Plaintiff.

131.   **Causation.** The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

132.   Officers' employment at FCI Dublin was essential to their commission of tortious misconduct, which would not have happened absent their employment and privileges.

133.   Defendant officers' conduct was grossly negligent as they showed complete disregard for rights and safety of Plaintiff.

134.   It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent serious harm including sexual abuse.

135.   Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### EIGHTH CLAIM FOR RELIEF
#### *Plaintiff Against the United States*
**(Negligent Infliction of Emotional Distress ("NIED") – California common law)**

136.   Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

137.   Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

138.   The elements of an NIED claim are as follows: (1) the defendant engaged in negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory standard was a cause of the serious emotional distress.

139.    Defendant officers and the United States engaged in negligent conduct and willful violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both extreme and outrageous behavior and negligence.

140.    The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

141.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**NINTH CLAIM FOR RELIEF**
***Plaintiff Against the United States***
**(Assault and Battery - California common law)**

142.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

143.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants, while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

144.    Assault occurs when (1) a defendant acts, intending to cause harmful or offensive contact, and (2) the plaintiff reasonably believes that they were about to be touched in a harmful or offensive manner.  *See, e.g.*, Judicial Council of California, California Civil Jury Instructions at 845 (2024).

145.    A person committed a battery if (1) they touched a plaintiff with the intent to cause harm, (2) the plaintiff did not consent to the touching, and (3) the plaintiff was harmed by the touching.  *Id.* at 842.

146.    Defendants subjected Plaintiff  to assault and battery when an officer grabbed Plaintiff, making unconsented physical contact with him, and pulling him to the ground, causing injury to Plaintiff's back.

147.    As a direct and proximate result of the foregoing, Plaintiff suffered immediate

COMPLAINT

1   physical and emotional harm.

2   148.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

3   States for the wrongful acts/omissions of its employees.

4   **CLAIMS FOR RELIEF UNDER THE TVPA**

5   149.    Plaintiff incorporates by this reference the allegations contained in the preceding

6   paragraphs as if set forth fully herein.

7   150.    The exploitation of vulnerable people is so common that Congress has passed the

8   Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq*., a comprehensive

9   statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, of persons

10  engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or

11  obstructing anti-trafficking enforcement.

12  151.    Specifically, the TVPA punishes anyone who attempts to, conspires to, or actively

13  "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or

14  solicits by any means a person; or  . . . benefits, financially or by receiving anything of value, from

15  participation in a [trafficking] venture" while knowing "that means of force, threats of force,

16  fraud, coercion . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C.

17  § 1591(a); 18 U.S.C. § 1594.

18  152.    "Coercion" means "threats of serious harm to or physical restraint against any

19  person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to

20  perform an act would result in serious harm to or physical restraint against any person" or "the

21  abuse or threatened abuse of law or the legal process."  18 U.S.C. § 1591(e)(2).

22  153.    "Serious harm" means "any harm, whether physical or nonphysical, including

23  psychological, financial, or reputational harm, that is sufficiently serious, under all the

24  surrounding circumstances, to compel a reasonable person of the same background and in the

25  same circumstances to perform or to continue performing commercial sexual activity in order to

26  avoid incurring that harm."  18 U.S.C. § 1591(e)(5).

27  154.    The term "abuse or threatened abuse of law or legal process" means the use or

28  threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or

COMPLAINT

for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.  18 U.S.C. § 1591(e)(1).

155.    Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C § 1591(e)(3).

156.    Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means.

> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of the abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589 (a).

157.    The TVPA punishes anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).  18 U.S.C. § 1589 (b).

158.    The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589 (c)(1).

159.    The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the

COMPLAINT

1   same circumstances to perform or to continue performing labor or services in order to avoid

2   incurring that harm." 18 U.S.C. § 1589 (c)(12).

3       160.    The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any

4   way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d).

5       161.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to]

6   bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or

7   conspires to benefit, financially or by receiving anything of value from participation in a venture

8   which that person knew or should have known has engaged in an act in violation of this chapter)

9   in an appropriate district court of the United States and may recover damages and reasonable

10  attorneys fees."  18 U.S.C. § 1595(a).

11      162.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18

12  U.S.C. § 1595(c).

**TENTH CLAIM FOR RELIEF**
**Plaintiff Against Defendant OLIVEROS**
**(Sex Trafficking)**

13

14

15      163.    Defendant OLIVEROS engaged or attempted to engage in sex trafficking of

16  Plaintiff as prohibited under 18 U.S.C. §§ 1589, 1591, 1595.

17      164.    Defendant OLIVEROS forced Plaintiff to engage in commercial sex acts within the

18  meaning 18 U.S.C. § 1591.  These sex acts included forcing Plaintiff to have sex with his

19  girlfriend while Defendant OLIVEROS watched.

20      165.    Defendant OLIVEROS knowingly recruited, enticed, and solicited Plaintiff by

21  targeting him and his girlfriend and arranging for them to have sex in front of him.

22      166.    Defendant OLIVEROS made Plaintiff commit these sexual acts through force,

23  fraud, or coercion within the meaning of 18 U.S.C. § 1591.  For example by:

24          •   Forcing Plaintiff to have sex with his girlfriend in a cell where they could
                not easily escape.
25

26          •   Using power as a correctional officer to control incarcerated individuals'
                movement between cells and his ability to issue disciplinary reports for the
27              purposes of watching them have sex.

28      167.    These methods of force, fraud, and coercion were a plan designed to make Plaintiff

COMPLAINT

believe that he would suffer serious harm should he not obey his sexual advances.

168.    These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint.

169.    Defendant OLIVEROS exchanged valuable goods and special benefits for these sex acts.  In this way, Defendant OLIVEROS's conduct constitutes an attempt to engage in sex in exchange for things of value, the definition of commerciality under 18 U.S.C. § 1591.

170.    These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595.

171.    Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. §§ 1591, 1595.

172.    Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendant.

173.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for Defendant's wrongful conduct.

**ELEVENTH CLAIM FOR RELIEF**
**Plaintiff Against All Individual Capacity Defendants**
**(Conspiracy to Violate the Trafficking Victims and Protection Act, 18 U.S.C. § 1584)**

174.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

175.    The Trafficking Victims Protection Act establishes that "[w]hoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section; . . . [and w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." 18 U.S.C. § 1594 (b), (c).

176.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture

COMPLAINT

which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).

177.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

178.    At all relevant times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted, and/or conspired to continue their longstanding practice of exchanging sex for valuable goods or special benefits as defined in 18 U.S.C. § 1591, or obtaining forced labor as defined in 18 U.S.C. § 1589 by coercing incarcerated people to perform sexual acts.

179.    All Defendants conspired to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, solicit, or benefit from participation in the sex and/or labor trafficking of Plaintiffs as defined by 18 U.S.C. § 1581 *et seq.*

180.    Defendants committed overt acts in furtherance of the agreement or understanding by committing one or more of the following acts:

- Directly receiving or attempting to receive sexual acts in exchange for valuable goods or benefits;

- Transporting or directing incarcerated people into locations where principal perpetrating officers could engage or attempt to engage in sexual acts;

- Engaging in a range of retaliatory tactics to threaten and silence survivors or witnesses of sexual abuse or trafficking including but not limited to threats of physical abuse and/or restraint, threats of law or process, indiscriminate searches, taunting, and humiliation;

- Knowingly refusing to report abuse or trafficking occurring at FCI Dublin and/or obstructing investigation into abuse or trafficking;

- Maintaining practices, policies, and procedures that allowed Defendants to benefit from unlawful commercial sex ventures and human trafficking.

181.    Defendants' participation and assistance in the furtherance of an illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused the facilitation of the sex acts in support of their trafficking venture.

182.    Defendants knew or should have known that their acts supported and facilitated a

COMPLAINT

trafficking venture.

183.     Defendants' conspiracy kept Plaintiff and other witnesses of the trafficking from taking meaningful action, resulting in significant injuries to Plaintiff.

184.     Defendants' conduct caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and Plaintiffs have claims for damages for such violations under 18 U.S.C. § 1584; 18 U.S.C. § 1589, 18 U.S.C. § 1591; 18 U.S.C. § 1595.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

## PRAYER FOR RELIEF

Plaintiff prays for judgment against Defendants, and each of them, as follows:

185.     An award of compensatory, punitive, and nominal damages to Plaintiff in an amount to be determined at trial;

186.     An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

187.     For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED:  March 7, 2024          ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ Carson D. Anderson
      Stephen Cha-Kim
      Carson D. Anderson
      Natalie Steiert

DATED:  March 7, 2024          RIGHTS BEHIND BARS

By:   /s/ Oren Nimni
      Ms. Amaris Montes (she/her)
      Mr. Oren Nimni (he/him)

Attorneys for Plaintiff

COMPLAINT